**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ZAKIR HOSSAIN and DANIEL INCLAN, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*

                  Plaintiff,

        v.

LET'S EAT, LLC
      d/b/a EXTRA VIRGIN, and
MICHELE GATON,

                Defendants.

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

---

       Plaintiffs, ZAKIR HOSSAIN ("Plaintiff HOSSAIN") and DANIEL INCLAN ("Plaintiff INCLAN") (collectively the "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, LET'S EAT, LLC d/b/a EXTRA VIRGIN (the "Corporate Defendant") and MICHELE GATON (the "Individual Defendant" and collectively with the Corporate Defendant, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit policy, (2) unpaid tips due to an invalid tip pool, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiffs allege that, pursuant to the New York Labor Law ("NYLL"), they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit policy, (2) unpaid tips due to an invalid tip pool, (3) unpaid spread of hour premiums, (4) compensation for late payment of wages, (5) liquidated damages, (6) statutory penalties due to WTPA violations, and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.      Plaintiff HOSSAIN, for all relevant time periods, was a resident of Queens County, New York.

6.      Plaintiff INCLAN, for all relevant time periods, was a resident of Kings County, New York.

7.      Corporate Defendant LET'S EAT, LLC is a domestic business corporation organized under the laws of the State of New York, with a principal place of business ("Extra Virgin") and address for service of process located at 259 West 4th Street, New York, NY 10014.

8.     Individual Defendant MICHELE GATON is the owner and principal of Corporate Defendant LET'S EAT, LLC. Individual Defendant MICHELE GATON exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant MICHELE GATON exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members at each of the restaurant locations. At all relevant times, employees of Defendants' business could complain to Individual Defendant MICHELE GATON directly regarding any of the terms of their employments, and Individual Defendant MICHELE GATON would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant MICHELE GATON exercised functional control over Defendants' business and its financial operations.

9.     At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

10.     At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

11.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house persons (including servers, bussers, bartenders, food runners, and delivery persons, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

12.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' invalid tip credit policy and invalid tip pooling policy.

13.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

14.     Plaintiffs brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house persons (including servers, bussers, bartenders, food runners, and delivery persons, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or Class Members).

15.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their

names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

16.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

17.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (1) failure to pay minimum wages and overtime wages, due to an invalid tip credit policy, (2) invalid tip pooling policy, (3) failure to compensate spread of hours premiums, (4) late payment of wages, (5) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (6) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

18.     Plaintiffs and the Class suffered from Defendants' failure to pay minimum and overtime wages due to Defendants' invalid tip credit policy because Defendants (i) failed to properly provide Plaintiffs and Class members with tip credit notices as required by NYLL § 195

at their dates of hiring and annually thereafter, (ii) deducted tip credits from Plaintiffs' and Class members' wages for all hours worked despite having caused them to engage in non-tipped duties for continuous periods of time exceeding thirty (30) minutes every shift, and (iii) deducted tip credits from Plaintiffs' and Class members' wages for weeks where the total amount of non-tip producing work or side work they each performed exceeded 20% or 2 hours of the total work they performed for that week.

19.     Plaintiffs are both able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

20.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of

separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a)  Whether Defendants employed Plaintiffs and the Class within the meaning of the New York Labor Law;

    b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class members properly;

    c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class members for their work;

d)  Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e)  Whether Defendants properly provided notice to Plaintiffs and Class members that Defendants were deducting tip credits from their wages;

f)  Whether Defendants provided proper wage statements informing Plaintiff and Class members of the amount of tip credits deducted from their wages for each payment period, their proper overtime rates of compensation, and other information Defendants were required to provide to them on their wage statements, as provided under the New York Labor Law;

g)  Whether Defendants deducted the proper amounts of tip credit allowance from Plaintiffs' and Class members' wages under the New York Labor Law;

h)  Whether Defendants required Plaintiffs and Class members to perform non-tipped work for more than 20% of their work day;

i)  Whether Defendants required Plaintiffs and Class members to perform non-tipped work for continuous periods of time exceeding 30 minutes;

j)  Whether Defendants subjected Plaintiffs and Class members to a valid tip pool;

k) Whether Defendants paid Plaintiff and Class Members in a timely manner.

l) Whether Defendants provided Plaintiff and Class members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law;

m)  Whether Defendants provided Plaintiff and Class members with proper wage statements with each payment of wages, as required by New York Labor Law;

n)  Whether Defendants paid Plaintiff and Class members the New York State minimum wage for all hours worked; and

o)  Whether Defendants properly compensated overtime premiums to Plaintiffs and Class members for their overtime hours worked under New York State law.

**STATEMENT OF FACTS**

i.  **Plaintiffs' Employment Backgrounds**

   a.  ***Plaintiff HOSSAIN***

23.  In or around September, 2021, Plaintiff HOSSAIN was hired by Defendants to work as a Busser at Defendants' Extra Virgin, located at 259 West 4th Street, New York, NY 10014.  Plaintiff is still employed by Defendants,

24.  From the start of his employment until around January 2023, Plaintiff HOSSAIN was scheduled by Defendants to work three (3) days per week, for six and one-half (6.50) hours per day on Mondays and Tuesdays and thirteen (13) hours on Sundays, for a total of twenty-six (26) hours per week.

25.  From around January 2023 until the end of his employment, Plaintiff HOSSAIN was scheduled by Defendants to work two (2) days per week, for six and one-half (6.50) hours on Tuesdays and eight (8) hours on Sundays, for a total of fourteen and one-half (14.50) hours per week.

26.  At all relevant times, Defendants scheduled FLSA Collective Plaintiffs and Class Members to work similar amounts of hours per week.

27.     Throughout his entire employment, Plaintiff was paid by Defendants at a tipped credit hourly rate of $10.00, for all hours worked. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

### b. *Plaintiff INCLAN*

28.     In or around 2011, Plaintiff INCLAN was hired by Defendants to work as a Busser at Defendants' Extra Virgin, located at 259 West 4th Street, New York, NY 10014.  In or around, 2020, Plaintiff was promoted by Defendants to a Food Runner. Plaintiff's employment with Defendants was terminated in or around February 2024.

29.     Throughout his employment, Plaintiff INCLAN worked six (6) days per week. Plaintiff INCLAN worked Monday through Thursday from 4:30 p.m. to 11 p.m., and Friday and Saturday from 4:30 p.m. to 12 a.m. For a total of forty-one (41) hours per week.

30.     Throughout his employment, Plaintiff was paid by Defendants at a tipped credit hourly rate for all hours worked. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

### ii. **Plaintiffs' Unpaid Spread of Hours Premiums Claim**

31.     Throughout their employments, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were regularly required by Defendants to work double shifts, which were always over ten (10) hours in length.

32.     However, Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs, and Class Members their owed spread of hours premiums for every workday lasting more than ten (10) hours, in violation of the NYLL.

### iii. **Plaintiffs' Frequency of Pay Claim**

33.    At all relevant times, Defendants regularly failed to timely pay Plaintiff and Class Members. Under NYLL § 191, Plaintiff and Class Members (i) were manual workers and (ii) had to be compensated once every week.

34.    At all relevant times, Defendants compensated Plaintiffs and Class Members their weekly tips approximately three (3) weeks late.

35.    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiffs and Class Members their proper wages on a weekly basis, in violation of the NYLL.

### iv. **Plaintiffs' Invalid Tip Credit Policy Claim**

36.    Throughout their employments, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' invalid tip credit policy, in violation of the FLSA and the NYLL.

37.    Throughout Plaintiffs' employments, Defendants deducted a tip credit from Plaintiffs', FLSA Collective Plaintiffs', and Subclass Members' wages.

38.    However, Defendants were not actually entitled to deduct any tip credits from Plaintiffs', FLSA Collective Plaintiffs, and Class Members' wages under the FLSA or the NYLL because Defendants: (i) failed to provide tip credit notices to Plaintiff and Class Members at their hirings, (ii) deducted tip credits from Plaintiffs', FLSA Collective Plaintiffs, and Class Members' wages for all hours worked despite having caused them to engage in non-tipped duties for (a) continuous periods of time exceeding thirty (30) minutes, and (b) more than 20% of the work they performed each week, (iii) subjected Plaintiffs, FLSA Collective Plaintiffs, and Class

Members to an invalid tip pool, and (iv) deducted unlawful amounts of tip credits from Plaintiffs', FLSA Collective Plaintiffs', and Class Members' wages.

39.     As a direct result of Defendants' invalid tip credit policy, Plaintiff and Class Members were paid below the New York State minimum wage in violation of the NYLL. *See* 12 N.Y.C.R.R. § 146-1.2, *et seq.*

40.     Throughout Plaintiffs' employments, Defendants required Plaintiffs to engage in non-tipped duties such as polishing and rolling silverware, sweeping and mopping the restaurant and bar, disposing trash, cleaning the bathrooms, re-filling the bar's ice wells, setting up and/or breaking down the outside dining area, among others. Plaintiffs would spend 2 to 3 hours per single shift doing non-tipped side work, including periods of at least 30 minutes of continuous time. Because Plaintiffs' single shifts were 6.50 to 8 hours long, Plaintiffs' 2 to 3 hours of non-tipped side work always took up about 25% (2/8) to 46.1% (3/6.50) of Plaintiffs' hours worked. Defendants also required FLSA Collective Plaintiffs and Class Members to engage in similar non-tipped side work for similar amounts of time.

41.     Additionally, Plaintiff and Class Members never received any notices from Defendants that Defendants were claiming a tip credit on their weekly compensation.  They were never told by Defendants that Defendants were deducting tip credits from their wages nor did they ever receive proper notice by Defendants as to the amount of tip credit allowances Defendants deducted for each payment period during their employments.

42.     Further, Defendants deducted unlawful amounts of tip credits from Plaintiffs', FLSA Collective Plaintiffs', and Class Members' wages. In January 2024, the New York State tip-credit minimum hourly rate was increased from $10.00 per hour to $10.65 per hour.

However, Defendants continued to compensate Plaintiffs, FLSA Collective Plaintiffs, and Class Members at $10.00 per hour throughout 2024.

43.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiffs', FLSA Collective Plaintiffs', and Class Members' wages, in violation of the FLSA and the NYLL.

**v.    Plaintiffs' Invalid Tip Pool Claim**

44.    Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' invalid tip pool, in violation of the FLSA and the NYLL.

45.    At all relevant times, Defendants utilized a tip pool whereby non-tipped employees, who did not provide tipped services to Defendants' clients, were included. These non-tipped employees included hostesses, baristas, and Defendants' managers, among others.

46.    Plaintiffs', FLSA Collective Plaintiffs' and Class Members' tips and gratuities are covered under the meaning of § 196-d of the NYLL. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." § NYLL 196-d.

47.    Further, Defendants failed to provide customers with an explicit written statement that any portions of surcharges, service fees, and gratuities left on tables would be retained by Defendants' management. Defendants' failure to provide notice of their retention of tips from tipped employees was inadequate to satisfy the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

48.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining tips from Plaintiffs, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

**vi.  Plaintiffs' WTPA Violation Claims**

49.     At all relevant times, Plaintiffs and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

50.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiffs and Class Members at the beginning of their employment with Defendants.

51.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

52.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendants' conduct actually harmed Plaintiffs and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

53.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class Members. This delayed payment caused Plaintiffs and Class Members to struggle to pay bills and other debts.

54.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

55.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820

N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

56.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

57.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

58.    Here, it is clear that Defendants' failure to provide Plaintiffs and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

59.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

60.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

61.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

62.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

63.     Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

64.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiffs, FLSA Collective Plaintiffs, and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

65.     Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

66.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

67.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

68.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

69.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to an invalid tip credit policy.

70.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to an invalid tip pool.

71.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

72.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

73.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

74.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

75.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, overtime wages and liquidated damages.

76.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

<u>COUNT II</u>

<u>VIOLATION OF THE NEW YORK LABOR LAW<br>ON BEHALF OF PLAINTIFF AND CLASS MEMBERS</u>

77.     Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

78.     At all relevant times, Plaintiffs and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

79.     Defendants willfully violated Plaintiffs' and Class Members' rights by subjecting them to a policy of timeshaving.

80.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to timely pay them their full weekly wages, as required by the NYLL § 191(a)(1).

81.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay them spread of hours premiums for all their shifts worked in excess of ten (10) hours.

82.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

83.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the lawful minimum wage for all hours worked.  As factually described above, Defendants were not entitled to claim any tip credits from Plaintiffs' and Class Members' wages under the NYLL.

84.    Defendants willfully violated Plaintiffs' and Class members' rights by subjecting them to an  improper policy and practice in which they were required to engage in non-tipped work for: (i) continuous periods of time exceeding 30 minutes; and/or (ii) more than 2 hours or 20% of each of their workweeks.

85.    Defendants failed to provide Plaintiffs and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

86.    Defendants failed to provide Plaintiffs and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

87.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime wages, unpaid spread of hours premiums, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid wages, including overtime, due to an invalid tip credit policy, due under the FLSA and the NYLL;

d.      An award of disgorgement of all improperly distributed tips, due under the FLSA and the NYLL;

e.      An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

f.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

g.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

h.      An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

i.      Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j.      Designation of this action as a class action pursuant to F.R.C.P. 23;

k.      Designation of Plaintiffs as Representatives of Class; and

l.      Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 28, 2024
        New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

By:    /s/ *C.K. Lee* _____
        C.K. Lee, Esq.