UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                               :

ZAKIR HOSSAIN, DANIEL INCLAN, and     :
ARMANDO MESINAS, *on behalf of themselves,*  :
*FLSA Collective Plaintiffs, and the Class,*     :          24-CV-4078 (JAV)
                                               :
                      Plaintiffs,     :      <u>OPINION AND ORDER</u>
                                               :
       -v-                               :
                                               :
LET'S EAT, LLC d/b/a EXTRA VIRGIN,      :
MICHELE GATON, and JOEY FORTUNATO,   :
                                               :
                       Defendants.     :
-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

      Plaintiffs Zakir Hossain, Daniel Inclan, and Armando Mesinas (collectively, "Plaintiffs") have moved for an order (i) granting conditional collective action certification pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and New York Labor Law ("NYLL"), (ii) providing for court-facilitated notice of the collective action, (iii) compelling defendants Let's Eat LLC d/b/a Extra Virgin ("Extra Virgin"), Michele Gaton, and Joey Fortunato ( "Individual Defendants" and collectively with Extra Virgin, "Defendants") to produce certain information to Plaintiff, and (iv) providing for posting of the notice at the restaurants owned by Defendants.  For the reasons set forth below, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

**A.    Factual Background**

Defendants owned and operated a restaurant enterprise under the trade name "Extra Virgin," located at 259 West 4th Street, New York, NY 10014. ECF No. 31 ("Am. Compl.") ¶ 9. Extra Virgin closed its operations on May 31, 2024. *Id.* ¶ 26. Plaintiff Zakir Hossain was employed by Defendants as a busser from September 2021 until the restaurant permanently closed on May 31, 2024. ECF No. 38 ("Hossain Decl."), ¶ 1. At all times during his employment, Plaintiff Hossain was a tipped employee. Am. Compl. ¶ 29. During his employment, Defendants allegedly employed "well over 30 servers, bussers, bartenders, food runners, and delivery persons." Hossain Decl. ¶ 19.

In support of their motion for conditional certification of the Proposed Collective, Plaintiffs each submitted an affidavit. ECF Nos. 38-40. In his affidavit, Plaintiff Hossain alleges that he was initially scheduled to work for Defendants three days per week, for 6.5 hours per day on Mondays and Tuesdays and 13 hours on Sundays, amounting to a total of 26 hours per week. Hossain Decl. ¶ 4. This schedule changed in January 2023, when he began to work a total of 14.5 hours per week. *Id.* Plaintiff Hossain claims that he was paid at an hourly tip credit rate of $10.00 during his employment. *Id.* ¶ 5. In 2024, when the tip credit minimum wage increased to $10.65, Plaintiff Hossain alleges that he was still paid at the prior hourly rate of $10.00. *Id.*

Plaintiff Hossain asserts that Defendants never explained the tip credit to him, nor did they inform him that they were taking a tip credit. *Id.* ¶ 6. Plaintiff Hossain alleges that he was required to perform several non-tipped duties every shift during the stint of his employment. *Id.* ¶ 7. These tasks included "polishing and rolling silverware, sweeping and mopping the restaurant and bar, disposing trash, cleaning the bathrooms, re-filling the bar's ice wells, sweeping the sidewalk, setting up and/or breaking down the outside dining area." *Id.* During busier times, Defendants allegedly forced Plaintiff Hossain to join the food preparers in the kitchen, which would require Plaintiff Hossain to take up to 20% of his total shift performing non-tipped duties. *Id.* Regardless of the hours he performed on non-tipped duties, Defendants allegedly still claimed a tip credit for all of the hours Plaintiff Hossain worked.

Plaintiff Hossain claims that the other tipped employees were forced to perform "extensive amounts" of non-tipped work. *Id.* ¶ 8. These employees complained to one another and even raised concerns to Individual Defendant Michele Gaton about the impact of the non-tipped work on their ability to earn tips. *Id.* Despite their concerns, Defendant Gaton allegedly dismissed their complaints by responding, "That's just how it is," and made no efforts to resolve the situation. *Id.*

Plaintiff Hossain also alleges that Defendants implemented a tip pool that included employees who do not usually interact with customers or perform tipped work. *Id.* ¶ 9. This tip pool included an employee with the name of "Guilmer," who

served as a shift leader. *Id.* According to Plaintiff Hossain, shift leaders exclusively manage employees and therefore never interacted with the restaurant's customers, yet Guilmer was marked as being awarded 1 point in the tip pool. *Id.* Plaintiff Hossain avers that his co-workers and he complained about the inclusion of managers in their tip pool because these managers, despite never interacting with customers, were receiving a portion of the tipped employees' "hard-earned tips." *Id.* ¶ 10. When he complained to Defendant Gaton, she responded, "[M]y lawyer told me it's okay to [sic] for managers to take tips." *Id.*

Further, Plaintiff Hossain claims that he and his fellow employees were often paid their wages and tips late. *Id.* ¶ 11. Specifically, in December 2023, he did not receive his paycheck before the 2023 Christmas season and only was paid in January 2024. *Id.* Management once again brushed off complaints about late wage payments from the employees. *Id.* ¶ 12.

Additionally, Plaintiff Hossain avers that from the start of his employment until January 2023, Defendants forced him to work double shifts lasting more than 10 hours in duration on Sundays but "never paid [him] any spread of hours premiums." *Id.* ¶ 13. Lastly, Plaintiff Hossain alleges that he never received any wage notice from Defendants for the duration of his employment and that he received wage statements that did not accurately reflect his pay rates and spread of hours premium. *Id.* ¶¶ 14-15.

The other two Named Plaintiffs, Daniel Inclan and Armando Mesinas, also submitted declarations in support of Plaintiff's motion. *See* ECF Nos. 39-40.

Plaintiff Inclan worked as a busser for Extra Virgin in 2011 before being promoted to food runner in 2020.  ECF No. 39 ("Inclan Decl."), ¶ 1.  His employment was terminated in February 2024.  *Id.*  Plaintiff Mesinas was hired as a deliveryman for Extra Virgin in January 2015, and his employment was terminated in March 2024.  ECF No. 40 ("Mesinas Decl."), ¶ 1.

Similar to Plaintiff Hossain, Plaintiff Inclan alleges that he did not receive any notice explaining the concept of a tip credit and that he was not paid the higher tip credit minimum wage after the increase, Inclan Decl. ¶ 4, and states that Defendants claimed a tip credit for all of his hours worked, even if those included hours of non-tipped work, *id.* ¶ 5.  Plaintiff Mesina claims that he had the same experience.  Mesina Decl. ¶¶ 5-8.  Plaintiffs Inclan and Mesina shared the same concerns as Plaintiff Hossain regarding the amount of non-tipped work the tipped employees were forced to perform and the inclusion of non-customer facing managers in the tip pool.  Inclan Decl. ¶¶ 6-7; Mesina Decl. ¶ 9.  Plaintiffs Inclan and Mesinas also encountered the same problems of being paid their wages late and not being paid overtime premiums and the spread of hour premiums for shifts that lasted over 10 hours.  Inclan Decl. ¶¶ 8-12; Mesinas Decl. ¶¶ 10-11.  Both Plaintiffs never received any wage notice and were provided with inaccurate wage statements.  Inclan Decl. ¶¶ 13, 15; Mesinas Decl. ¶¶ 14-15.

Furthermore, Plaintiff Inclan claimed that Defendants only provided him with documents in English, even though he was unable to read documents in written English.  Inclan Decl. ¶ 14.  Plaintiff Mesinas adds that he had to use his

own money to cover expenses for the purchase of supplies and groceries on behalf of the restaurant, but he was never reimbursed for these purchases. Mesinas Decl. ¶ 12. When business slowed significantly for the restaurant during the COVID-19 pandemic, Plaintiff Mesinas claims that he was compensated solely in the form of tips because Defendants could not pay him in his wages, and he was never reimbursed for the unpaid wages. *Id.* ¶ 13.

Plaintiff Hossain notes that he "observed Defendants apply the same wage and hour policies to all their employees" and that he confirmed this through "conversations with my co-workers . . . as we always talked about our wages during work, especially during pay day." Hossain Decl. ¶ 3; *see also* Inclan Decl. ¶ 2; Mesinas Decl. ¶ 3. He further alleged that "[i]t was known among us [employees] that Defendants consistently engaged in improper practices and implemented illegal policies." *Id.* All three Plaintiffs claim that their experiences were shared by other employees and that they often discussed these concerns and complaints with other employees. *See* Inclan Decl. ¶ 4 ("My co-workers were also not informed about the tip credit based on observations and conversations with them."); Mesinas Decl. ¶ 14 ("Based on my conversations with my co-workers, I know that they did not receive any wage notice as well.")

## B.    Procedural Background

Plaintiffs filed this action against Michele Gaton and Extra Virgin on May 28, 2024, seeking unpaid wages, tips, and spread of hour premiums under the FLSA and the NYLL. Plaintiffs seek to assert FLSA claims on behalf of themselves and

all non-exempt front-of-house and back-of-house persons (including servers, bussers, bartenders, food runners, delivery persons, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants within the last six years ("Covered Employees").  Plaintiffs allege that Defendants failed to pay the Covered Employees their proper wages, including their overtime premiums, under the FLSA.  Am. Compl. ¶ 15.  Plaintiffs also aver that, with respect to tipped employees, Defendants instituted an invalid tip credit policy, improperly retained gratuities, and implemented an invalid tip pool.  *Id.* ¶¶ 15, 21.

Plaintiffs requested leave to file an Amended Complaint on January 21, 2025, to add Joey Fortunato as an Individual Defendant and Armando Mesinas as an additional plaintiff.  *See* ECF No. 25.  The Court granted Plaintiffs' motion for leave to file the Amended Complaint on February 6, 2025, *see* ECF No. 28, and Plaintiffs filed the Amended Complaint on February 13, 2025, ECF No. 31.  The Amended Complaint included additional claims for unpaid overtime premiums due to straight pay and proposed that back-of-house employees be included in the proposed class.  Am. Compl. ¶¶ 1-2, 14.

On February 28, 2025, Plaintiffs filed the instant motion, seeking the following:  conditional certification of the FLSA collective action pursuant to 29 U.S.C. § 216(b); approval of the proposed notice, including the proposed consent form; approval of Plaintiffs' proposed dissemination procedures for the notice; an opt-in period of six years; equitable tolling of the statute of limitations for opt-in

plaintiffs back to the filing of the Complaint; and production in Excel format by Defendants of names, titles, compensation rates, period of employment, last known mailing addresses, email addresses, and all known telephone numbers of Covered Employees within 10 days of the Court's Order approving the motion.

## DISCUSSION

### A.    Conditional Certification of Collective Action

The FLSA allows employees to bring a suit on behalf of themselves and other "similarly situated" employees.  29 U.S.C. § 216(b).  In contrast to a class action brought under Federal Rule of Civil Procedure 23, FLSA collective actions need not satisfy a showing of numerosity, typicality, commonality, or representativeness to obtain certification.  *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).  Potential plaintiffs are "similarly situated" and may join the collective "to the extent they share a similar issue of law or fact material to the disposition of their [FLSA] claims."  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020).  For collective actions, "only potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment or benefit from it.'"  *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839,  at *2 (S.D.N.Y. Sept. 16, 2013) (citations and quotations omitted).  The Court has discretion to "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)  (cleaned up).

Based upon the record presented, the Court grants the motion for conditional certification of the collective action pursuant to 29 U.S.C. § 216(b).  The Court limits the definition of Covered Employees to those who worked for Defendants in the three-year period prior to the filing of the Complaint in this action.

### 1.    Similarly Situated

The Second Circuit has "endorsed a two-step process for certifying FLSA collective actions based on the 'similarly situated' requirement.  At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law.  At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Scott,* 954 F.3d at 515 (cleaned up); *see also Myers*, 624 F.3d at 555.

When determining initial certification in the pre-discovery stage, "courts employ a relatively lenient evidentiary standard." *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y.2007) (the "burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage").  But "while a plaintiff's burden of proof is low, it is not non-existent — certification is not automatic." *Sanchez v. JMP Ventures, LLC*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (quoting *Romero v. H.B. Auto. Grp., Inc.*, No.

11 Civ. 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012)) (cleaned

up). Plaintiffs cannot "present only conclusory allegations that similarly situated

employees exist" and successfully obtain conditional certification. *Han v. Madison

Ave. Realties, LLC*, No. 22-cv-382 (LJL), 2022 WL 2609003, at *3 (S.D.N.Y. July 8,

2022) (citations omitted). Similarly, "the 'modest factual showing' cannot be

satisfied simply by unsupported assertions." *Myers*, 624 F.3d at 555.

Plaintiffs contend that their affidavits attest to "Plaintiffs' own experiences

and best knowledge based on their personal observations and conversations shared

with Covered Employees," which "sufficiently support their assertions that

Defendants uniformly applied unlawful employment policies and compensation

schemes to all Covered Employees." ECF No. 36 ("Pl. Mem. of Law") at 11-

12. Plaintiffs also support their declarations with "Defendants' own documents

provided to Plaintiffs, which demonstrate a clear common payroll policy that apply

[sic] to all employees subject to that payroll, including all Covered Employees." *Id.*

at 12.

This evidence is sufficient to meet Plaintiffs modest evidentiary burden at the

conditional certification stage. "[C]ourts in this circuit have routinely granted

conditional collective certification based solely on the personal observations of one

plaintiff's affidavit." *Mata v. Foodbridge LLC*, No. 14 Civ. 8754 (ER), 2015 WL

3457293, at *3 (S.D.N.Y. June 1, 2015) (quoting *Hernandez v. Bare Burger Dio Inc.*,

No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013)); *see also*

*Zhang v. Four Seasons Beauty Spa Inc.*, No. 18-cv-08259-GHW, 2019 WL 13414974,

at *2 (S.D.N.Y. Sept. 13, 2019) ("[C]onditional certification may be granted based on the complaint and a plaintiff's own affidavit."). In this case, Plaintiffs have submitted three declarations that corroborate the others' observations, as well as payroll records documenting the purported FLSA overtime violations. *See Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 548 (S.D.N.Y. 2015) (finding sufficient affidavits of two employees who "corroborate[d] each others' personal treatment and observations of the treatment of other employees").

Moreover, "[i]t is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs . . . [a]s long as they were all similarly situated with respect to being subject to the same policy . . . and there exists a factual nexus among the plaintiffs." *Martinenko v. 212 Steakhouse Inc.*, No. 22-cv-518 (LJL), 2022 WL 1227140, at *5 (S.D.N.Y. Apr. 26, 2022) (citations omitted); *see also Cheng v. Via Quadronno LLC*, No. 20-cv-8903 (LJL), 2021 WL 4319569, at *3 (S.D.N.Y. Sept. 23, 2021) ("Courts have found that conditional certification is appropriate where the plaintiff avers that other employees worked more than forty hours a week but were not paid overtime.").

Defendants also argue that Plaintiffs have failed to provide sufficient evidence that all of the tipped employees who are proposed for inclusion in the Collective Action were subject to the same policies. ECF No. 43 ("Def. Opp.") at 2-3. Yet Hossain specifically avers that he observed the tipped staff perform non-tipped tasks, as he did; that he spoke with other tipped staff about their wages; that the

staff complained to each other about being forced to assist with meal preparation, even though it impacted their ability to earn tips; that "all tipped employees," including Hossain and other employees listed in the declaration, voiced concerns to management about excessive non-tipped duties; and that all tipped employees complained to each other about managers being included in the tip pool. Hossain Decl. ¶¶ 2-10. While Defendants concede that the Named Plaintiffs have presented evidence regarding conversations they had with other tipped employees, they argue that no dates are provided for when the alleged conversations with other employees took place. Def. Opp. at 3. Plaintiffs need not assert the dates for when their conversations with other employees took place to meet the low evidentiary standard applicable at this stage, however. *Hussein v. Headless Widow LLC*, 24-cv-04658 (LJL), 2024 WL 5078317, at *4 (S.D.N.Y. Dec. 11, 2024) ("Plaintiffs do not need to identify the precise date or time of a conversation with an employee in their motion for conditional certification.").

Relying on *Alvarado v. Villas Market Place Inc.,* No. 19-CV-4036 (VEC), 2020 WL 91489 (S.D.N.Y. Jan. 8, 2020), and *She Jian Guo v. Tommy's Sushi Inc.*, 14-CV-3946 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014), Defendants further argue that Plaintiffs have provided only conclusory and vague allegations regarding non-tipped workers. Def. Opp. at 3-4. In *Alvarado*, the plaintiff's affidavit made the conclusory assertion that "other employees" were subject to the same time-shaving policies as he was, without offering the basis for his purported knowledge. 2020 WL 91489, at * 2. And in *Tommy's Sushi*, the assertion that plaintiffs were "aware"

that unspecified other categories of employees did not receive minimum wage or overtime compensation, without more, was considered insufficient to establish that such categories of employees were similarly situated.  2014 WL 5314822, at *3.  Those cases are easily distinguishable.

Plaintiffs here have set forth in their declarations numerous conversations with other employees in various positions at the restaurant, including non-tipped employees in back-of-house positions such as cook, food preparer, and salad preparer.  *See, e.g.*, Inclan Decl. ¶¶ 2, 9; Hossain Decl. ¶¶ 2-3.  Plaintiffs' three sworn declarations together provide sufficient evidentiary detail to provide the foundation for their assertion that these other employees were subject to the same wage-and-hour violations as the Named Plaintiffs.  *See, e.g.*, Inclan Decl. ¶ 9 ("When they were cleaning up the kitchen, Rafael [LNU] and Antonio [LNU] told me that they too were not being paid overtime premiums for the overtime hours that they worked."); *see also* Hossain Decl. ¶ 15; Inclan Decl. ¶ 15; Mesinas Decl. ¶ 15.

It is true that Plaintiffs' affidavits do not provide details regarding how much other employees were paid for their hours.  Plaintiffs, however, are not required to do so to meet their evidentiary burden as "[i]t is a reasonable inference that, where two employees were unlawfully paid flat rates for overtime hours, other employees were subject to the same pattern or practice."  *Cheng*, 2021 WL 4319569, at *4 (citing *Huer Huang v. Shanghai City Corp.*, No. 19-cv-7702 (LJL), 2020 WL 5849099, at *8 (S.D.N.Y. Oct. 1, 2020)).  Here, Plaintiffs' affidavits attach as exhibits records of Plaintiffs' paystubs and payroll documents.  *See* ECF No. 37

13

("Lee Decl."), Ex. B; Hossain Decl., Ex. 1; Inclan Decl., Ex. 2; Mesinas Decl., Ex. 3.  These records show that the Named Plaintiffs earned a $10.00 hourly rate despite working over 40 hours that week.  This evidence of a payroll violation is sufficient to show a "factual nexus" between Named Plaintiffs and other potential opt-in plaintiffs who were on the same payroll.  *See Vilella v. Pup Culture LLC*, No. 23-cv-2291 (LJL), 2023 WL 7986562, at *4 (S.D.N.Y. Nov. 17, 2023) ("Since these documents evince a payroll violation, it stands to reason that other employees were similarly situated.").  It is therefore "reasonable to infer" based on this evidence that other employees who also worked more than 40 hours in a workweek would have been paid pursuant to the same pay practices as Named Plaintiffs.  *Cheng*, 2021 WL 4319569,  at *4 (finding that even one or two sworn statements may satisfy conditional certification).

Accordingly, the Court approves the conditional certification of the collective action.

## B.  Time Period for Covered Employees

Plaintiffs propose that the class of Covered Employees include all individuals who worked for Defendants during the six-year period prior to the filing of the Complaint because their state law claims have a six-year limitations period.  Pl. Mem. of Law at 19; *see also* N.Y. Lab. L. § 198(3).  Yet the opt-in procedures pertain solely to the federal FLSA claims, as New York Labor Law does not have an equivalent collective action provision.  And the statute of limitations for FLSA

claims is two years for non-willful violations, and three years for willful violations.  29 U.S.C. § 255(a).

Although in appropriate cases some courts have authorized a six-year notice period where claims are asserted under both the FLSA and NYLL, *see, e.g.*, *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410-11 (S.D.N.Y. 2012), the Court does not discern a basis on the present record for sending an opt-in notice to individuals who would be time-barred from participating in the FLSA collective action.  "It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013).  Moreover, "[w]hile it is true that informing Plaintiffs with time-barred FLSA claims may shed light on the appropriateness of certifying a class action under the New York Labor Law," there is no such pending motion for class certification in the present case. *Deas v. Alba Carting & Demolition Inc.*, No. 17-CV-3947 (RA), 2018 WL 11409286,  at *5 (S.D.N.Y. Jan. 22, 2018) (cleaned up).  "If and when a class is certified under New York law, class members will receive notice at that time through the class action notification process." *Id.* (quotations and citations omitted).

Although the statute of limitations for FLSA claims runs until an opt-in plaintiff joins the lawsuit, and not from the date the complaint is filed, the Court nonetheless finds it appropriate to use the date the complaint was filed as the appropriate trigger for the notice period.  "Because equitable tolling issues often arise as to individual opt-in plaintiffs, [] courts frequently permit notice to be keyed

to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015) (cleaned up).

The definition of Covered Employees is therefore modified to include only those non-exempt front-of-house and back-of-house employees, including all servers, bussers, bartenders, food runners, delivery persons, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, employed by Defendants on or after May 28, 2021. This "three-year period is without prejudice to defendants' challenging particular opt-in parties in a motion for decertification." *Han*, 2022 WL 2609003, at *5.

## B. Adequacy of Notice of Collective Action

The form, content and distribution procedures of the notice to potential opt-in plaintiffs are committed to the broad discretion of the Court. *See, e.g.*, *Elmajdoub v. MDO Dev. Corp.*, No. 12 Civ. 5239 (NRB), 2013 WL 6620685, at *4 (S.D.N.Y. Dec. 11, 2013). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 664 (S.D.N.Y. 2017) (cleaned up). Defendants raise two objections to Plaintiffs' proposed notice. First, they contend that the notice should provide that consent forms should be returned to the Clerk of Court rather than Plaintiffs'

counsel.  Second, they object to the posting of the notice at the Defendants' places of business.  The Court addresses each of these in turn.

### 1. Return of Opt-In Forms

Defendants ask that any consent forms be returned to the Clerk of Court instead of Plaintiffs' counsel to avoid any disagreements regarding timeliness and to ensure that opt-in plaintiffs know that they can choose their own separate counsel.  Def. Opp. at 5.  Although the Second Circuit has not provided guidance on this issue, the majority of courts in this District direct potential opt-in plaintiffs to mail their consent forms to Plaintiffs' counsel.  *See, e.g.*, *Vilella*, 2023 WL 7986562, at *11.  The Court agrees and follows the majority rule.  "Doing so is particularly appropriate here because the Notice explicitly advises potential opt-in plaintiffs that they may consult or retain another attorney, . . . mitigating concerns that putative class members may be discouraged from retaining their own counsel." *Tommy's Sushi*, 2014 WL 5314822, at *5; *see also* Lee Decl., Ex. A.  Although the consent forms may be sent to Plaintiffs' counsel, counsel is ordered to file the consent forms on the docket within twenty-four hours of receipt.  *See Vilella*, 2023 WL 7986562, at *11.

### 2. Distribution of Notice

Defendants also object to Plaintiffs' proposed order to post the notice, along with the consent forms, in Defendants' places of businesses because the Extra Virgin restaurant is now closed.  Def. Opp. at 6.  While courts regularly approve the posting of notices on common employee spaces, *see, e.g.*, *Han*, 2022 WL 2609003, at

*6; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (citing cases), the Court recognizes the impossibility of doing so here given that the restaurant is no longer in operation. Moreover, Plaintiffs have sought approval to distribute notices by mail, e-mail and text message to former employees for whom contact information is available, and Defendants have not opposed this aspect of Plaintiffs' motion. Accordingly, the Court declines to order posting of notice in common employee spaces, but approves the dissemination of the notice by mail, e-mail and text message. *Deas*, 2018 WL 11409286, at *5.

## C.     Equitable Tolling

Plaintiffs request that this Court preemptively grant equitable tolling to all prospective opt-in plaintiffs, from the date of the filing of the Complaint until such time as notices are disseminated. Pl. Mem. of Law at 21-22. Plaintiffs argue that equitable tolling is justified as a categorical matter in FLSA cases because of the "extraordinary circumstances it takes for a motion for certification to be moved for and decided." *Id.* at 22.

"[E]quitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (cleaned up). Equitable tolling should only be granted when a movant can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). It is not yet clear whether any potential plaintiff will be time-barred as a result of any delay in the adjudication of the motion for conditional

18

collective action.  Any equitable tolling determination is therefore premature.  *Yap*, 146 F. Supp. 3d at 566.

The Court has already permitted notice to be disseminated based upon the date of the filing of the Complaint, allowing for determinations regarding timelines to be reserved to future motion practice.  "Individual plaintiffs may seek such tolling upon opting-in and demonstrating its applicability to his or her case."  *Id.*; *see also Cheng Xia Wang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840 (VSB), 2018 WL 3155835, at *5 (S.D.N.Y. June 28, 2018) ("Because Plaintiff has not established any 'rare and exceptional circumstances' warranting tolling, and because I can entertain any challenges to timeliness at a later date if necessary, I deny the Named Plaintiffs' request for equitable tolling." (cleaned up)).

Plaintiffs counter that their request for equitable tolling is warranted because they have diligently pursued their claims by: (1) seeking to amend the Complaint by adding overtime premium claims and expanding the class definition; and (2) filing the instant motion shortly after submitting the Amended Complaint and prior to discovery.  ECF No. 44 at 8.  But "the test for equitable tolling is not concerned with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a plaintiff who is seeking the application of the doctrine."  *Knox*, 282 F. Supp. 3d at 658.  The Court declines to make a ruling as to the entitlement to equitable tolling of any hypothetical opt-in plaintiffs at the present time.

**D.**    **Expedited Discovery of Contact Information for Potential Opt-in Plaintiffs**

Courts in this District routinely require Defendants to produce contact information for prospective opt-in members following conditional certification of the collective in order to "effectuate the FLSA's remedial purpose." *Cheng Xia Wang*, 2018 WL 3155835, at *6 (citation omitted).   In their motion, Plaintiffs seek production in Excel format of names, titles, compensation rates, period of employment, last known mailing addresses, email addresses, and all known telephone numbers of Covered Employees within 10 days of the Court's Order approving the motion.  Plaintiffs' request for such expedited discovery is granted in part and denied in part.

Defendants do not oppose Plaintiffs' request for production of contact information.  Defendants object, however, that 10 days is an "unreasonably short period of time for Defendants to amass the requested information, especially in light of the fact that the subject restaurant is closed and it will take time to retrieve the requested information."  Def. Opp. at 5.  Defendants ask for 45 days to produce the requested information to Plaintiffs' counsel.  *Id.*  The Court grants Defendants' request for additional time to gather this information in light of the fact that the business in question is no longer operating.

Defendants further argue that requiring them to compile this information into an Excel spreadsheet is unduly burdensome, and ask to be able to produce the information in any format that is "reasonably usable."  Def. Opp. at 6.  Defendants should provide the requested information in a computer-readable format, although

it need not be in Excel.  *See Wilk v. Quality Installations of NY, Inc.*, 724 F. Supp. 3d 76, 91 (E.D.N.Y. 2024) ("[C]ourts have required that the contact information of potential FLSA collective members be produced in computer-readable formats whenever possible.").

Finally, Defendants object that titles and compensation rates are unnecessary for the dissemination of notice.  Def. Opp. at 5-6.  But requests for titles and compensation rates are often granted by courts in this Circuit at the conditional certification stage.  *See, e.g.*, *Vilella*, 2023 WL 7986562, at *10; *Hernandez v. NGN Mgmt. Grp. LLC*, No. 12 Civ. 7795 (RWS), 2013 WL 5303766,  at *5 (collecting cases); *Han*, 2022 WL 2609003, at *5 (same).

## CONCLUSION

Accordingly, the motion for conditional class certification is GRANTED IN PART AND DENIED IN PART.  The Court GRANTS the motion for conditional certification of the collective action pursuant to 29 U.S.C. § 216(b) of non-exempt front-of-house and back-of-house employees, including all servers, bussers, bartenders, food runners, delivery persons, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, employed by Defendants on or after May 28, 2021, but DENIES the motion for conditional certification of those employed by Defendants prior to May 28, 2021.  The Court approves the distribution of the proposed notice of the FLSA action to Covered Employees in the form of Exhibit A to the Declaration of C.K. Lee (ECF No. 37-1), with the modification to the definition of Covered Employees set forth herein.  Additionally,

within 45 days of this Order, Defendants are ORDERED to produce to Plaintiffs the names, titles, dates of employment, last known mailing addresses, email addresses, titles, compensation rates, and all known telephone numbers of all Covered Employees in a computer-readable format.

The Clerk of Court is directed to terminate ECF No. 35.

SO ORDERED.

Dated:  June 18, 2025
         New York, New York

_____
        JEANNETTE A. VARGAS
        United States District Judge